NOT DESIGNATED FOR PUBLICATION

No. 120,895

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JEFFREY D. HOWELL,
*Appellant*.

MEMORANDUM OPINION

Appeal from Reno District Court; TIMOTHY J. CHAMBERS, judge. Opinion filed August 14, 2020. Affirmed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Andrew R. Davidson*, assistant district attorney, *Keith Schroeder*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BUSER, P.J., HILL and WARNER, JJ.

PER CURIAM: Jeffrey D. Howell seeks our reversal of his aggravated robbery and attempted aggravated robbery convictions because the trial court refused his request to instruct the jury about lesser included crimes. To reverse on such grounds, a defendant must show us that there is a reasonable probability an instruction on the lesser included offenses would have changed the jury's verdict. Howell has not done so. Because of the strong evidence that Howell used a dangerous weapon in each robbery, we see no

1

reasonable probability that had the instruction been given, the jury would have reached a different verdict.

His second issue centers on the kidnapping charges for moving the two Subway employees away from their work area and forcing them into the bathroom before leaving the store. Following recent Kansas Supreme Court precedent, we hold there was sufficient evidence to sustain Howell's kidnapping convictions. We affirm.

*Howell commits several crimes.*

The State arrested Howell for a string of aggravated robberies and an attempted aggravated robbery. In October 2016, Howell robbed Lauri Kunz while she was working at a dog grooming shop in Hutchinson. When she told the robber that there was no money in the store, he pulled out a knife and demanded that she give him money. She got $80 out of her own purse and gave it to him. From his voice, Kunz recognized him as a customer of the shop.

Then, in August 2017, Howell tried to rob Tammy Sloan while she was sitting in her car in a Dillons parking lot in Hutchinson. She said a man approached her passenger window, leaned in, and said he needed money. She told him she did not have any money. He persisted and pulled out a knife. She did not give him any money but did get out of the car and called the police. The man fled. She later identified Howell as the man that tried to rob her, and also identified the knife he used.

The next day, Howell robbed Emily Idler, a clerk at a Kwik shop. He pointed a gun at her and told her to give him the money. She gave him the money out of the cash register and some money from the safe. The robbery was recorded on the store's security cameras. Howell's hat and flip-flops that he wore were later recovered during a search of his residence.

The robbery string ended in September 2017, when Howell robbed Amber Keaton and Kevin Smith at a Subway restaurant. The robber came in the front door, walked around to the employee area, and opened the gate. He told Keaton he had a knife and she needed to open the cash registers. Smith opened the registers and gave the man money. After that, the man told Keaton and Smith to go into the bathroom or he would cut them up. He told them not to leave and not to call the police. Keaton later testified that he was scared and thought they would be cut if they did not go into the bathroom. Keaton later identified Howell as the man who robbed them. At trial, Keaton did not recall seeing a knife.

The State charged Howell with three counts of aggravated robbery for robbing:
- Kuntz at the dog groomers;
- Idler at the Kwik Shop; and
- Smith and Keaton at Subway.

The State also charged Howell with one count of attempted aggravated robbery for trying to rob Sloan in the Dillons parking lot. The State also charged him with two counts of kidnapping for forcing the two employees, Smith and Keaton, into the Subway bathroom.

To us, Howell claims reversible error when the court failed to instruct the jury on lesser included offenses. After that, he contends there was insufficient evidence to prove him guilty of kidnapping as it was charged by the State. We turn to the instruction issue first.

*Lesser included instructions*

Howell contends the trial evidence showing that he used a deadly weapon in the robberies was "far from overwhelming" and argues the trial court erred by not giving lesser included offense instructions for robbery and attempted robbery. He focuses on the

Subway robbery. He contends Keaton did not see a knife during the Subway robbery and the video showed that during the robbery, Howell had kept his hand at his side.

At trial, defense counsel asked for a lesser included offense instruction of robbery for the Subway robbery. The court denied the request, relying on Smith's testimony about the knife. "He was able to describe it, viewed it, and . . . he was very emphatic in his testimony. The female victim, Miss Keaton, was not as clear about seeing the knife. But she certainly heard conversation in regards to the knife." During closing arguments, defense counsel argued Smith did not see a knife—rather, he just heard the word knife. For proof, counsel relied on the video surveillance and Keaton's testimony. A review of the law is helpful at this point.

A trial court shall instruct the jury on a lesser included offense where there is some evidence that would reasonably justify a conviction of the lesser included offense. K.S.A. 2017 Supp. 22-3414(3); *State v. Perez-Medina*, 310 Kan. 525, 535, 448 P.3d 446 (2019). When a defendant requests a lesser included offense instruction at trial, as Howell did here, we must view the evidence in the light most favorable to the defendant. *State v. Randle*, 311 Kan. ___, 462 P.3d 624, 629-30 (2020).

When the failure to give a lesser included offense instruction is challenged on appeal, we consider:

- Whether the issue was properly preserved for appeal;
- whether the instruction was legally and factually appropriate; and
- whether the error was harmless or requires reversal.

*State v. Gentry*, 310 Kan. 715, 720, 449 P.3d 429 (2019). If a lesser included instruction was requested, the failure to give the instruction is harmless only if the State shows there is no reasonable probability the instruction would have changed the jury's verdict. 310 Kan. at 720-21, 728-29.

4

In Kansas, robbery is "knowingly taking property from the person or presence of another by force or by threat of bodily harm to any person." K.S.A. 2019 Supp. 21-5420(a). Aggravated robbery is robbery "when committed by a person who: (1) Is armed with a dangerous weapon." K.S.A. 2019 Supp. 21-5420(b)(1). Robbery is a lesser included offense of aggravated robbery. *State v. Simmons*, 282 Kan. 728, 742, 148 P.3d 525 (2006). The only substantive difference between the two crimes is the presence of a dangerous weapon.

Here, when we look at the evidence in the light most favorable to Howell, as required by *Randle*, there was some evidence proving each of the elements of the lesser crimes—robbery and attempted robbery. One of the Subway clerks did not remember seeing a knife. And the video recording did not show Howell holding a knife, but it showed him holding his hand at his side.

And logically, when the State presented proof of the crimes of aggravated robbery and attempted aggravated robbery, it also presented proof of the lesser crimes since the elements are identical—except for the dangerous weapon. Simply put, proof of the aggravated crime, by definition, is proof of the lesser crime. Thus, instructions for robbery and attempted robbery were legally appropriate. See *State v. Williams*, 308 Kan. 1439, 1458, 430 P.3d 448 (2018).

But we hold any error here for failing to give these instructions was harmless. Overwhelming evidence supported the verdict that Howell used a deadly weapon in all of the robberies and the attempted robbery. The testimony about the use of a weapon in the dog grooming shop, the knife used in the Dillons parking lot, and the gun at the Kwik Shop was undisputed. In the Subway robbery, although Keaton did not remember seeing a knife, she did remember that Howell threatened to cut her with a knife. And Smith was, as the trial court stated, "very emphatic" that Howell had a knife. Smith described the knife, testified that he thought he would get stabbed, and he told Howell not to stab him.

5

We do not see a reasonable probability an instruction on the lesser included offenses would have changed the jury's verdict. This is not reversible error.

*Proof of kidnapping*

Again, focusing on the Subway robbery, Howell argues the State did not introduce evidence that any confinement facilitated the *commission* of a crime as he was charged. Instead, he argues the State's evidence showed that he confined Keaton and Smith to facilitate *flight*. We find no specific response to this claim by the State.

In Kansas, kidnapping "is the taking or confining of any person, accomplished by force, threat or deception, with the intent to hold such person . . . (2) *to facilitate flight or the commission of any crime*." (Emphasis added.) K.S.A. 2019 Supp. 21-5408(a)(2). In its charges, the State alleged that Howell confined Keaton and Smith "with the intent to hold said person to facilitate *the commission of any crime*." (Emphasis added.)

But at trial, the State appeared to argue that Howell confined Keaton and Smith in the bathroom to facilitate *flight*. The prosecutor said Howell confined Keaton and Smith "while he [made] his escape" because "he was trying to get away from his robbery and he wanted to delay them long enough that he could get out of the way."

In its instructions, the court covered both bases. The judge told the jury it could find Howell guilty of kidnapping if Howell confined Keaton and Smith with the intent to "facilitate flight or the commission of any crime."

When sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after reviewing all of the evidence in a light most favorable to the prosecution, this court is convinced a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. Appellate courts do not reweigh evidence, resolve

6

evidentiary conflicts, or make witness credibility determinations. *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018).

We must emphasize a fundamental point of criminal law. The State must prove the crimes charged, regardless of whether it may have proved another crime. As an example we cite *State v. Fitzgerald*, 308 Kan. 659, 666, 423 P.3d 497 (2018). In *Fitzgerald*, the State charged one subsection of the aggravated criminal sodomy statute but proved aggravated criminal sodomy under a different subsection of the statute. The court reversed for insufficient evidence. 308 Kan. 659, Syl. But we note for that crime, the different subsections were alternative means of committing aggravated criminal sodomy—they contained distinct material elements that each demanded a specific kind of proof. 308 Kan. at 664-66; see *State v. Laborde*, 303 Kan. 1, 6, 360 P.3d 1080 (2015). That contrasts with the kidnapping statute. We will come back to this point later.

Our Supreme Court has held that K.S.A. 21-3420(a)(2) (now K.S.A. 2019 Supp. 21-5408[a][2]) "describes two distinct methods of perpetrating the crime of kidnapping, *i.e.*, to facilitate flight or the commission of any crime." *State v. Alires*, 246 Kan. 635, 637, 792 P.2d 1019 (1990). In *Alires*, as here, the defendant argued insufficient evidence because the complaint charged kidnapping "to facilitate the commission of a crime," but the evidence showed kidnapping done to "facilitate flight."

The court, at first, recited the rule that "If the evidence introduced at trial does not support a conviction of the offense charged in the complaint, an accused cannot be found guilty of some other offense neither charged in the complaint nor instructed to the jury." *Alires*, 246 Kan. at 637. But the court then concluded that the removal of a convenience store clerk from the store after she was instructed to open the cash register and put the money into a brown paper bag facilitated the commission of the robbery because it hid the fact that a robbery was in progress, substantially lessened the risk of detection by a customer, and enhanced the robbers' escape from the scene of the crime. Thus, there was

7

sufficient evidence to support the kidnapping conviction as charged. 246 Kan. at 635-36, 638.

Thirteen years later, in *State v. Martinez*, No. 88,852, 2003 WL 22053353, at \*4-5 (Kan. App. 2003) (unpublished opinion), a panel of this court reversed a conviction of kidnapping for insufficient evidence when the defendant was charged with kidnapping to facilitate *commission of* a crime and not charged with kidnapping to facilitate *flight from* the crime. The panel was impressed by the fact that the robbery had been completed when the robbers took the victim in back and bound him:

"By the time Pina had been bound, the robbers had accomplished their purpose; they had stolen money and merchandise, and the robbery was substantially complete. This makes it difficult to see how Pina's confinement could have facilitated commission of an aggravated robbery that had been completed prior to his being bound.

". . . We conclude the evidence shows the kidnapping was done with the intent to facilitate flight from the crime. However, defendant cannot be convicted of that crime because he has not been charged with it." 2003 WL 22053353, at \*4.

A more recent Supreme Court ruling convinces us not to take a mechanical approach to this question. Our Supreme Court has clarified that facilitation of flight and facilitation of the commission of a crime are not alternative means.

"The members of the legislature grouped certain potentially distinct and potentially overlapping items, which must mean they did not want jurors to have to split hairs over whether a kidnapping or aggravated kidnapping was committed to facilitate flight or the commission of any crime." *State v. Haberlein*, 296 Kan. 195, 209, 290 P.3d 640 (2012).

This is an important holding. It means that, in a challenge to the sufficiency of the evidence based on an alternative means argument, the court determined it need "not reach

the question of whether the evidence was sufficient on each." *Haberlein*, 296 Kan. at 209.

There is no clear line between facilitating the commission of the crime and facilitating flight. The overlap is apparent from the court's definition of facilitation of the commission of a crime because the confinement "[m]ust have some significance independent of the [robbery] in that it makes the [robbery] substantially easier of commission or substantially lessens the risk of detection" of the robbery. *State v. Buggs*, 219 Kan. 203, 216, 547 P.2d 720 (1976). A more recent case illustrates our point.

> "To constitute a kidnapping under K.S.A. 2018 Supp. 21-5408(a)(2) when a taking or confining is alleged to have been done to facilitate another crime's commission, the resulting taking or confinement: (a) must not be slight, inconsequential, or merely incidental to the other crime; (b) must not be of the kind inherent in the nature of the other crime; and (c) must have some significance independent of the other crime in that it makes the other crime's commission substantially easier or substantially lessens the risk of detection." *State v. Harris*, 310 Kan. 1026, Syl. ¶ 2, 453 P.3d 1172 (2019).

In *Harris*, the robber continued controlling and restraining the victim's movements even after she handed him the money. By doing so, the robber prevented the victim's escape which both made the robbery substantially easier to commit and substantially lessened the risk of detection, and at the same time facilitated the robber's flight. 310 Kan. at 1033.

The facts here are similar. The overlap warned about in *Buggs* and *Haberlein* is obvious here. The confinement of Keaton and Smith in the Subway bathroom facilitated both possible purposes, lessening the risk of early detection of the robbery, and facilitating flight from the scene of the crime. There was sufficient evidence to support the kidnapping charge. The jury was instructed on both methods. These methods are not alternative means. Thus, following the reasoning in *Buggs*, *Haberlein*, and *Harris*, we do not find reversible error here.

Affirmed.